(Lorain County, O., Common Pleas.)
(Rendered June 28th, 1899.)

ELIZER G. JOHNSON, a tax payer on behalf of the City of Elyria, Ohio, v. THE CITY OF ELYRIA, OHIO, et al.

---

(1). On the 23rd day of February, 1898, the council of the city of Elyria, Ohio, (a city of the fourth grade, second class) declared by resolution the necessity of issuing and selling the bonds of said city in the sum of $250,000.00 for the purpose of erecting water works in said city, and authorizing the submission of the question of issuing and selling said bonds to a vote of the electors of said city at a general election to be held April 4th, 1898, and directed the mayor to issue his pro-

clamation, giving notice of said election. At the election held upon said date more than two-thirds of the electors voting, voted in favor of the issuing of said bonds.

(2). On the 5th day of March, 1898, four days before the expiration of the ten days after the legal publication of said resolution, the mayor issued his proclamation notifying the electors of said election.

(3.) On the 24th day of May, 1898, and before any proceedings were begun to issue said bonds or to construct said waterworks, the council of said city passed a resolution, declaring the necessity to issue and sell the bonds of said city in the sum of $45,000.00 for the purpose of purchasing water-works already existing in said city, and authorizing the submission of that question to the electors at a special election to be held on the 27th day of June, 1898.

(4). Thereafter said election was duly held and more than two-thirds of the votes cast thereat were in favor of the issuing of said bonds and the purchase of said water-works. In pursuance of this vote said bonds were issued and the water-works plant transferred to the city.

(5). The resolution of February 23rd, 1898, as well as the resolution of May 24th, 1898, declared the object of the issuing of bonds to be "to supply the city and its inhabitants with water"·

(6). After the passage of the resolution of May 24th, 1898, and the proceedings thereunder, the council of said city advertised the bonds authorized by the resoluton of February 23d, 1898, and the proceedings thereunder for sale, and threatened to issue and sell the same.

Held: First, the proceedings under the resolution of February 23rd, 1898, subsequent to the passage of said resolution were void for the reason that no legal notice was given of the holding of the election authorized by said resolution.

Second, the resolution of May 24th, 1898, and the proceedings thereunder operated and revoked any authority conferred by the resolution of February 23rd, 1898, and the proceedings thereunder.

---

NYE, J.

On the 23rd day of February 1898, the council of the city of Elyria, (the same being a city of the fourth grade, the second class), adopted a resolution declaring it necessary to issue and sell the bonds of the city of Elyria, in the sum of $250,000.00, for the purpose of erecting water-works in said city, and for submitting the question of the issue of said bonds to a vote of the electors of said city.

On the 5th day of March, 1898, the mayor of the city of Elyria issued a proclamation to the qualified electors

to vote upon the proposition of issuing said bonds in the amount and for the purposes stated, on the 4th day of April, 1898.

This proclamation was published every week until the election, in two newspapers in the city of Elyria, and at the election held on the 4th day of April, pursuant to this notice, two-thirds and more of the electors voted in favor of issuing said bonds, there being 983 votes for and 345 votes against said proposed issue and sale of bonds.

On the 5th day of July 1898, the city council passed an ordinance providing for the issue and sale of the bonds of the city in the sum of $150,-000 in denominations of $1000 each, to be dated July 1st, 1898, bearing interest payable semiannually at the rate of $4\frac{1}{2}\%$ Said bonds to be known as series A, and when sold, the proceeds were to be, used for the purpose of erecting water-works and supplying water to the city of Elyria and the inhabitants thereof.

Some time after this, and on or about the 24th day of May, the city council entered into an agreement with the Elyria Gas and Water Company, a corporation, for the purchase of the waterworks of said company, for the sum of $45,000.00, and a resolution providing for a ratification of said contract by the voters of the city was duly passed, and the mayor thereupon issued a proclamation, which was regularly published, providing for the submission of the question to the electors at a special election to be held June 27th, 1898; and at this election more than two-thirds of the electors voted in favor of making said purchase, and of ratifying the action of the council in that respect, the vote standing 518 for and 102 against the proposition. The bonds of the city were thereupon issued and sold, and with the proceeds the city council purchased the entire plant, pumping-station, water mains, and rights and franchises of The Elyria Gas and Water Company.

Up to this time but little had been done by the city council towards the construction of a system of water-works.

The council employed a very competent engineer, Mr. L. E. Chapin, to make a survey and examination, and after due and careful consideration by him of the various sources of water supply, as well as cost and expense, he made his report to the council, together with full plans and specifications.

In this report he recommended the taking of water from Lake Erie by means of a pumping station on lands to be purchased by the city near the city of Lorain, Ohio, and bringing the water in mains to the city of Elyria; and on the 14th of July, 1898, the council, after a full and careful consideration of the question and of the report of the engineer, adopted an ordinance providing for the erection of waterworks, substantially in accordance with the report, plans and specifications of Mr. Chapin, the engineer. And in order to pay the expense of this construction of waterworks, series A. of the bonds above mentioned, amounting to $150,000. in denominations of $1000 each were issued by the council through its proper officers; and thereupon the plaintiff, a tax payer, in behalf of the city, has filed his petition in this court, and prays judgment that the proposed issue of bonds for the erection of waterworks, according to the plans and specifications so adopted may be enjoined by an order of the court, and in substance the grounds of his objection and complaint are—

First: That the resolution adopted on the 23rd day of February, 1898, declaring it necessary to issue and sell bonds in the sum of $250,000. was illegally passed, the meeting at which it was adopted not being, as he claims, a regular or special meeting, called either by the mayor or by three members of the council.

Second: That the mayor's proclamation for the election was null and void; that the mayor could not issue a proclamation according to law until the 9th day of March, 1898, whereas he did issue it on the 5th day of

March, and less than ten days after the resolution took effect.

That the proclamation being illegal and premature, the election held under it was also illegal and void.

Again, that the resolution the council adopted on the 24th day of May for the issue and sale of the bonds of the city in the sum of $45,000.00, and the purchase by the city with the proceeds thereof of the existing system of waterworks of The Elyria Gas and Water Company, as well as of the vote of the people ratifying that contract, effectually revoked the right and authority previously conferred to issue bonds in the sum of $250,000.00 for the erection of waterworks.

It is claimed by the plaintiff that the vote of the electors of the city on the proposition to purchase the existing plant of The Elyria Gas and Water Company with all its rights and privileges clearly indicated an enlargement and improvement of the existing system of waterworks, up to that time and then in use in the city, and not an entirely new construction beyond the limits of the city, and in violation (it is contended) of the preliminary resolution.

It is claimed and urged, if the Lake Erie system as shown by the plans and specifications of the engineer is adopted, that the major portion of the plant and property already purchased of the waterworks company for $45,-000.00 will be practically rendered useless and destroyed.

And it is further insisted that water in abundance for all present and future needs of the city, and of a quality superior to the quality of the water of Lake Erie can be obtained by utilizing the present system now owned by the city and by improving and enlarging the supply, which plaintiff says can be done at a small fraction of the cost of the erection and maintenance of the Lake Erie system, as shown by the plans heretofore adopted.

And the plaintiff further insists that the taxation required to meet the payment of the interest and principal of the bonds to be issued to meet this expense and cost would largely exceed the rate of taxation permitted by law.

On the hearing of the case a large number of witnesses were examined, touching the existing and proposed systems of water supply, and also the expense of enlarging, erecting and maintaining the respective systems proposed. Among these witnesses were a number of very competent experts of large experience and scientific attainments.

The hearing of this testimony implied that the court was asked to make a comparison of the utility and practicability of a number of plans suggested for furnishing water for the city.

In opposition to the plan adopted by the city in the report of the engineer, it was claimed that water could be taken from the river from a point four or five miles above the city, by providing large settling basins and reservoirs, and that the water could then be brought to the city in water mains without the use of an expensive and costly pumping machinery.

And on the other hand it was urged by representatives of the city that the water of Lake Erie, taken some distance from the shore, furnished not only an abundant supply, but that by means of properly constructed filters the water would be wholesome and fit for every domestic purpose.

All of this testimony going into the questions of fact and involving questions properly determinable by the members of the city council was objected to by counsel for the city, and the court without deciding the question of its admissibility, heard the testimony in that respect, subject to exception.

I have thus summarily stated the questions, or the main questions in issue in this case, as well as the general scope of the inquiry.

And in passing upon them, I may say that this is the second suit of this nature presented to this court. In the first case, which was decided more than a year ago, The Elyria Gas and Water Company complained and asked for an injunction against the issuing of bonds by the city for the erection of a system of waterworks.

The questions involved in that case were in no respect the same as those involved in this record; but the judgment asked for was practically the same, in as much as it put a stop to the proposed erection of waterworks at that time.

And I may say now, that in deciding the case at that time I had very serious doubt in regard to the legality and regularity of the proceedings of the council, authorizing the bond issue as then proposed; but the vote of the citizens of Elyria was so strongly in favor of the proposition, and the needs of the city so urgent in that respect that the court gave the defendant the benefit of the doubt it entertained, and rendered judgment, dismissing the plaintiff's petition.

This judgment of the common pleas court was soon thereafter affirmed by the circuit court; but the supreme court of the state on a petition in error, held otherwise, and decided that the action of the city council was illegal, and rendered judgment restraining the city from the issuing of its bonds under its proceeding. And the present suit arises out of the proceedings of council taken since the determination of the former suit.

Coming first to the question involved in the objection to the testimony, touching the relative merits of the several plans or systems of waterworks proposed.

The record shows that the city council adopted the report, plans and specifications of Mr. Chapin, the engineer, and it is to be presumed in favor of the acts and proceedings of a municipal body, that the members of the council acted advisedly and for the best interests of all concerned.

The members of the council are residents of the city of Elyria. They are supposed to be familiar with the needs of the city and of the wants of its inhabitants. They are supposed to know something about the water supply, what it has been in the past and how it may be improved. Certainly the judge of this court, having no knowledge of the matter, and acquiring at best very imperfect light through the medium of the testimony of the witnesses and the maps and charts and plans offered in evidence, cannot say that its judgment is better than that of the representatives of the people of Elyria in their city council. They are the immediate representatives and agents of the people, chosen among other things for the very purpose of doing that which is best to promote the health and best interests of the people as well as the growth and development of the city.

And while courts are authorized to interfere by injunction in cases of fraud, and where the abuse of discretion on the part of city officers is so great as to practically amount to fraud, oppression and injustice; yet in this case nothing of that kind has been developed in the testimony.

And while in this case the members of the city council may have adopted a more expensive plan, one that may cost after its erection and for maintenance a much larger sum, and involve heavier taxation than to utilize the existing waterworks system, taking the water from Black river, nevertheless, it is the judgment of the court in that respect that the determination of the city council in the adoption of the report of the engineer, and in the issuing of its bonds in that respect cannot be revised or set at naught by a judgment of this court.

There are, however, in this record more serious questions of law.

First: Was the action of the city council taken in regard to the issuing bonds for the sum of $45,000.00, and the vote of the people of Elyria, providing for the proposition to purchase the property of The Elyria Gas and Water Company, so inconsistent with the resolution of the 23rd of February and the proposition to bond the city for $250,000.00 for the erection of waterworks as to revoke and to annul the first ordinance, and this presents a very serious question.

If the people of Elyria and their representatives in the city council desired to erect waterworks, at a cost not exceeding $250,000.00, the way was open, the electors had clearly expressed their opinion in favor of it by more than two-thirds majority; and

no satisfactory reason was shown to the court why, after this was done, the city council desired to purchase and did purchase for $45,000.00 the existing waterworks; that is, the pumping station and all the rights and privileges which that company had in the streets of the city, and no answer was made to the claim that if it is now proposed to erect waterwoks, for which the present issue of $150,000.00 of bonds would be part of the series, but a small portion of this property so purchased of the waterworks company could be used. And it would seem in this light to have been a wholly unnecessary and unwise investment of money.

Something was said upon the hearing, that it was desired in this way by purchasing the waterworks company's property to get rid of a competitor; but that is not a very satisfactory answer. And it is also quite plain to the court that if waterworks are now to be erected at a cost of perhaps $250,000.00 when the whole is completed that about the only property available and that can be utilized in the present purchase will be such water mains as are of sufficient capacity for use in that respect; while the plant, pumping-station &c., and the franchises and privileges covered by its charter would be of very trifling consideration.

Again, the vote at the several elections in this respect is quite significant.

On the first proposition to issue bonds for $250,000. the vote was 983 for the issuing of bonds, while there were 345 against the issuing of bonds for the construction of waterworks.

And when the second proposition came to purchase for $45,000.00 the vote was 518 for and 102 against.

Now if there were 345 votes at the first election against issuing bonds for $250,000.00 involving that amount to taxation, I cannot well understand how that vote would be reduced to 102 votes, if it involved the proposition to not only bond the city for $250,000.00 if need be, but also $45,000.00 to purchase existing waterworks in addition.

Again, in the proposition submitted to the electors for the issue of bonds for $45,000.00, nothing had so far been done under the first vote, and in fact there was no reference or notice whatever of the first proposition. Whether the electors of the city of Elyria therefore understood and intended to not only issue bonds for $45,000.00 and therewith purchase the existing waterworks property, and then proceed with the construction of waterworks, involving an expenditure up to the maximum amount of $250,000.00, is a question which I am not at all clear.

The case of Moore against the city of Duluth, decided by the supreme court of Minnesota, October 31st, 1898, although not in all respects a parallel case, it is still, I think, strongly in point in this case.

In that case the proposition was submitted to the voters of the city "shall bonds to the extent of $1,856,000.00 be issued to construct an independent water plant in said city".

Second. Shall bonds to the extent of $1,856,000.00 be issued to purchase a water plant already in existence in the said city of Duluth.

And third, In event the voters shall declare in favor of purchasing the water plant already in existence, shall additional water and light bonds to the extent of $850,000.00 be issued for the purpose of extending and improving said plant.

At the election the voters declared in favor of the first proposition and against the second and third.

The council of Duluth then issued $1,106,000.00 of bonds so voted for, and with the proceeds of these bonds the city began the erection of waterworks, erecting a pumping station on Lake Superior. After the construction of the pumping station and water mains with the $1,106,000.00 of bonds, the voters of the city voted again to issue $1,250,000.00 for the purpose of purchasing the combined water and light plant of the Duluth Gas and Water Company, and with the proceeds of these bonds the city purchased the plant of said company.

Now after that, and after the city

had acquired the possession of the plant, the common council of Duluth took steps to issue and sell $300,00. more of the first issue of bonds.

And the supreme court of Minnesoto held this could not be done. And the court in its conclusion used the following language—

"In respect to this vote of the electors, we are of the opinion, taking all these facts into consideration, that it was the intention and understanding of those who favored the purchase of the old plant, that when the scheme was approved and bonds issued and the purchase made, the authority of the council was at an end, and that it could not proceed with the issuance of the balance $750,000. of the amount originally authorized for any purpose whatsoever; thus increasing the bonded indebtedness for this particular purpose to $3,106,000.00 "

"The view of this matter taken by the ordinary voter would be that with the purchase of the already operated plant and its connection with the new one the expenditures were at an end".

"Just as it would have looked had a proposition to purchase been submitted soon after the vote in favor of construction, and before any work had been done in the way of building up a new and independent plant".

And applying this general language to the case in hand, when the proposition was submitted to the electors in June, 1898, to purchase the existing plant or $45,000.00 before anything had been done under the first vote, would the ordinary voter understand, and did he understand, that he was not only voting for a tax to pay for $45,000.00 of bonds for waterworks already in use, but that the council might then go on and issue bonds up to the full limit of $250,000.00 in addition for the construction of waterworks?

Now this case to which I have made reference is more nearly in point than any I have been able to find or to which reference has been made by counsel on either side.

And again when the first vote was taken to bond the city for $250,000.00, it can hardly be supposed that any one believed or supposed that a proposition would be submitted to vote for $45,000.00 in addition to purchase the existing waterworks. And I greatly doubt whether the voters or a majority of the voters of the city of Elyria understood by these two votes that they were not only to construct waterworks within the city to cost as much as $250,000.00 if necessary, and also $45,000.00 in addition to purchase the existing plant, which according to the testimony brought out in the case would be in a large measure rendered of no value whatever if the original plan of constructing waterworks was adhered to.

There is no question but what a municipal corporation may own two plants, one acquired by purchase and another erected by it; after having acquired one in the former mode, may proceed to erect a new plant. All doubt upon this point is set at rest by the decision of our supreme court in the former case, reported in the 57th, Ohio St. But the supreme court in that case is very careful to state that the proposition to do so should be plainly and clearly stated, so that there may be no doubt whatever on the part of the electors in respect to it, and it was because both propositions to erect and purchase waterwork were submitted to the voters at one election in the former case that the supreme court held the proceeding void.

One other question arises, and that is in regard to the proclamation of the mayor. The preliminary resolution was adopted on the 23rd day of February, 1898. The first publication of said resolution was made on the 26th day of February, 1898.

Section 1695, Revised Statutes, provides "All bylaws, resolutions, and ordinances of a general nature must be published, and that no ordinance shall take effect until the expiration of ten days after the first publication".

There is no longer any doubt that this resolution is a resolution of a general nature within the statute, and that as such section 1695 must be complied with.

Now this resolution was published for the first time February 26th, and would not be in force thereafter until the 9th, day of March, 1898.

The mayor's proclamation was issued on the 5th day of March, 1898, so that when this proclamation was published and dated, there was no power to issue the proclamation. The proclamation was premature.

Now, does the fact that this resolution was published continuously from the 5th day of March in the newspapers up to the time of the election cure the defect inherent in the fact that the proclamation was dated and issued five days before the mayor had any right whatever to issue it?

For all practical purposes one would say that the object of the mayor's proclamation was to advise the electors of the city of Elyria of the holding of an election, so that those who were in favor and those who were opposed could have ample time to vote at said election and to make up their minds in regard to their votes, and that this notice and proclamation having been in the newspapers from the 5th of March each week down to the time that the election was held, that practically each and all of the electors were as fully advised as if the first notice had been published after the expiration of ten days after the taking effect of the resolution.

But in proceedings in invitum the courts are somewhat strict. They require a strict and close compliance with the requirements of the statute.

A question somewhat similar was decided by the circuit court in the first circuit at the April term 1888. The case of Hensly v. The City of Hamilton, 3 Ohio Circuit Court Reports, 201. That was a case brought by a tax payer to restrain the issuing of bonds for the purpose of erecting and operating gas works in the city of Hamilton. And in that case the mayor issued his proclamation for an election before the expiration of ten days from the taking effect of the ordinance, and the court uses this language in respect to the mayor's proclamation in said case.

"If the mayor therefore, is to act under this, he must wait until the ordinance has vital power. It virtually says to the mayor: 'you shall give thirty days' proclamation of the election; but you must not proceed to do that until ten days after the first publication of the ordinance'. Thus you can issue no proclamation until the 11th day of March, and then you may proceed and advertise for such election to be held in thirty days from that time, and the day of election shall be April 2nd 1888. Now such a conjunction of time cannot possibly occur, and therefore no election can be had under it".

It is true that in the case referred to there was not sufficient time within which to hold the election as provided by the ordinance, but the second paragraph of the syllabus of the case says: "When the ordinance provides that it shall take effect and be in force from and after ten days after its publication, any act done under it until that time has elapsed after its first publication is void."

Now applying that rule to this case, this was a resolution requiring a publication, because of its general nature. The mayor therefore legally was bound to wait until ten days had expired from the date of the first publication. Whatever he did before that, according to this authority, was null and void. He did not in this case wait, but dated and published his proclamation before the ten days had expired. And his proclamation was not only published, but it was dated on the 5th day of March, clearly before the ordinance or resolution was in force, and before it had any life, and before the mayor could do any thing legally under it.

The several republications of that ordinance from and after that date down to the time of the election did not, in my judgment cure the defect.

The publication of this proclamation is a substantial matter. It is the basis of the entire proceeding, and I am therefore of the opinion that the law required a strict adherance to the provision of this section, and that his publication of the ordinance was premature, and if his proclamation was

illegal and premature, for the same reason the election under it would have no validity.

Numerous other questions have been presented by counsel arising upon this record, but I have not time to notice all of them. I have considered those which I considered the most important and substantial. And while I am not entirely clear that my judgment is correct, still, looking at the case as one where the proceeding is under the statute which particularly points out the steps to be taken, and where the question involved is the taxation of citizens, my judgment is that on the whole it will be better for the city council to submit this entire question at another election to the voters of the city. By so doing all doubt as to the issuing of these bonds for the construction of new waterworks and the issuing of bonds in the amount of $250,000.00 in addition to the purchase already made, all this uncertainty can be cleared up, and the question of doubt that arises upon the premature publication and issuing of the mayor's proclamation can be remedied and corrected. And thus the way can be made clear for a speedy solution of this question by the people of the city of Elyria.

It is the judgment of the court that the relief prayed for by the plaintiff in his petition be granted, and that the defendants be perpetually enjoined from issuing or selling the bonds of said city in any amount whatever.